IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | Case No. 2:19-cr-0194 |
| **Plaintiff,** : | |
| : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| v. : | |
| : | |
| **VINCENT BROCOLI,** : | |
| a/k/a Vince, : | |
| a/k/a Matthew Dehart, : | |
| a/k/a Bunch Media, : | |
| a/k/a Bunch Marketing, : | |
| : | |
| **Defendant.** : | |

**OPINION & ORDER**

This matter is before the Court on Defendant Vincent Brocoli's Motion for Compassionate Release, pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF No. 44). For the following reasons, the Court **GRANTS IN PART** Mr. Brocoli's motion.

**I. BACKGROUND**

On November 22, 2019, Mr. Broccoli entered a guilty plea to one count of cyberstalking, in violation of 18 U.S.C. § 2261A(2). (ECF No. 20). On July 27, 2020, this Court sentenced Mr. Brocoli to a 30-month term of imprisonment, followed by a three-year term of supervised release. Mr. Brocoli has served approximately 21 months of his sentence, with an anticipated release date of October 22, 2021.

After Mr. Brocoli was sentenced, he remained in the Butler County Correctional Complex in Hamilton, Ohio, until December 18, 2020. He was then transferred to state prison at Cimarron Correctional Facility ("Cimarron"), in Cushing, Oklahoma, where he remained for approximately 6 weeks, until January 30, 2021. Subsequently, he was incarcerated at Tallahatchie County

1

Correctional Facility in Tutwiler, Missouri from January 30, 2021 to February 23, 2021. Shortly thereafter, on February 23, 2021, he was transferred from Cimarron to USP Yazoo City, a high security federal penitentiary in Yazoo City, Missouri. Most recently, on June 3, 2021, Mr. Brocoli was transferred again to FTC Oklahoma City, which is an administrative security federal transfer center. Per the U.S. Marshals Service, Mr. Brocoli will be transferred at least one more time before he reaches his final BOP facility.

Mr. Brocoli filed his motion for compassionate release pro se on October 8, 2020. (ECF No. 44). He later submitted a letter in support of his motion for compassionate release on January 11, 2021, while he was incarcerated at Cimarron. (ECF No. 47). In the letter, Mr. Brocoli referred to being "grabbed" while incarcerated and reported that he was under significant psychological distress due to his history of being abused as a child. (*Id.*). The Court appointed counsel, Mr. Alan John Pfeuffer, to assist Mr. Brocoli in his quest for early release the same day, on January 11, 2021. (ECF No. 48). Because Mr. Broccoli was not yet in the Bureau of Prisons' custody, Mr. Pfeuffer requested and received a 90-day continuance to file a supplemental memorandum on Mr. Brocoli's behalf, until April 9, 2021. (ECF Nos. 49, 50).

In the meantime, Mr. Brocoli submitted another letter to the Court on February 17, 2021. (ECF No. 51). In that letter, Mr. Brocoli reported being "grabbed again" and that his "situation [was] only getting worse." (*Id.*). He described that he was facing "serious mental struggle." (*Id.*). On April 22, 2021, Mr. Pfeuffer filed a Supplemental Memorandum in Support of Mr. Brocoli's Motion for Compassionate Release. (ECF No. 55). The Government has since responded in opposition, and this matter is now ripe for review.

## II. STANDARD OF REVIEW

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a sentencing court may "reduce the term of imprisonment" of a defendant for "extraordinary and compelling reasons" once the exhaustion requirement or 30-day waiting requirement has been satisfied. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020). A district court's decision under Section 3582(c)(1)(A) will be reviewed for abuse of discretion and a district court "must supply 'specific factual reasons'" in support of its compassionate release decision. *United States v. Jones*, 980 F.3d 1098, 1101–02 (6th Cir. Nov. 20, 2020). In *Jones*, the Sixth Circuit clarified compassionate review mechanics under 18 U.S.C. § 3582 when an incarcerated person brings a motion on his own behalf. Specifically, the Sixth Circuit announced that U.S.S.G. § 1B1.13 is no longer considered an "applicable" policy statement "in cases where incarcerated persons file their own motions in district court for compassionate release." *Id.*

The *Jones* court set forth a three-step framework for district courts to follow when considering motions for compassionate release. *Id.* at *6. First, district courts must find whether "extraordinary and compelling reasons warrant" a sentence reduction. *Id*. Second, a court must determine whether the reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Given that the *Jones* court found that U.S.S.G. § 1B1.13 was no longer applicable to motions brought by incarcerated persons on their own behalf, federal district courts may now skip this step in those instances and "have full discretion to define 'extraordinary and compelling' without consulting the policy statement." *Id.* at *9. Third, a court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine whether, in the court's discretion, the reduction authorized by the statute is "warranted in whole or in part under the particular circumstances of the case." *Id.* at *6 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

### III. LAW & ANALYSIS

Mr. Brocoli moves for compassionate release and an order from this Court permitting him to serve the remainder of this 30-month sentence under home confinement and subject to electronic monitoring.

#### A. Exhaustion of Administrative Remedies

When reviewing motions seeking compassionate release brought under 18 U.S.C. § 3582(c)(1)(A), the Court's first step is to ask: Has the movant *either* fully exhausted all administrative rights, *or* have 30 days lapsed since the movant received the warden's letter denying the request? If the answer to either question is yes, then Court the considers whether extraordinary and compelling circumstances justify release. 18 U.S.C. § 3582(c)(1)(A); *see also Alam*, 960 F.3d at 832. The Sixth Circuit has held that this requirement is not a jurisdictional rule, but a claim-processing rule that "binds the courts only when properly asserted and not forfeited." *Id.* at 833.

In his motion, Mr. Brocoli indicates that he requested compassionate release on multiple occasions. First, Mr. Brocoli submits that he sent an electronic message to the Warden requesting release and home confinement on March 1, 2021, and that he received a response from the Warden on March 3, 2021, indicating that his request was forwarded to his Unit Manager for review. Two days later, on March 5, 2021, Mr. Brocoli requested to speak with the Unit Manager about his request, but he did not receive a response. Second, on March 12, 2021, Mr. Brocoli completed two BP A0148 Forms to request compassionate release and home confinement. He submitted one to Unit Manager Prophet and one to Counselor Price, but neither of these requests was answered. Third, Mr. Brocoli sent an electronic message requesting to speak with his Case Manager regarding his previously unanswered requests on March 17, 2021. Mr. Brocoli does not have access to a

4

printer and was therefore unable to print these requests to support his motion, but he did include a handwritten log of his efforts as an exhibit. (ECF No. 55-1, Ex. A).

The Government contends that Mr. Brocoli's handwritten record of his attempts is insufficient to confirm his efforts. The Government explains that it contacted the BOP to determine the status of Mr. Brocoli's requests, but that it "has as yet received no answer that confirms [Mr. Brocoli's] attempts to exhaust his administrative remedies." (ECF No. 60 at 2). The BOP's failure to respond to the Government, however, does not harm Mr. Brocoli's position; if anything, it strengthens it. Furthermore, the Court has no reason to doubt Mr. Brocoli's detailed account of his efforts to request compassionate release from the Warden at UPS Yazoo City. Because more than 30 days have lapsed since Mr. Brocoli's earliest request to the Warden, the Court finds that Mr. Brocoli has satisfied the administrative exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary and Compelling Reasons

Under the analysis set forth in *Jones*, this Court must next determine whether "extraordinary and compelling reasons" warrant a reduction in sentence under 18 U.S.C. § 3852(c)(1)(A)(i). This Court has "full discretion to define 'extraordinary and compelling'" without consulting the policy statement § 1B1.13." *Jones*, 2020 WL 6817488, at *9.

Through his motion, subsequent letters, and supplemental memorandum, Mr. Brocoli argues that the circumstances of his incarceration justify his compassionate release. He reports that he, with no prior criminal history, has been severely abused and victimized due to being housed in the BOP's highest security class of prisons. Mr. Broccoli also describes that he has "witnessed many fights, riots, stabbings, suicides, and dead bodies" and has been incarcerated with "serious gang members." (ECF No. 55-2, Ex. B).

5

Alarmingly, during the course of Mr. Brocoli's numerous facility transfers, he was subjected to an attempted rape while imprisoned at Cimarron (a state facility contracted to serve as BOP holding facility) on January 15, 2021. Mr. Brocoli reports that the attempted rape was especially traumatic for him because he was sexually abused when he was under ten years old. (Ex. 55-4, Ex. D). Although Mr. Brocoli is reluctant to provide details about the abuse he suffered, he describes that "it [wa]s something that occurred over a period of time." (*Id.*). His previous counsel advised him not to share his past sexual victimization or related mental health issues with any court officers, including his probation officer, and Mr. Brocoli complied.

On April 21, 2020, Dr. Carla S. Dreyer, Psy.D., performed a general psychological evaluation of Mr. Brocoli, and made the following findings: (1) Mr. Brocoli has a long-standing history of difficulties maintaining social relationships; (2) he has largely lived an isolated lifestyle, with his primary contacts and interactions with others being through computers; (3) he is a markedly paranoid individual who has a number of functional deficits; and (4) his history and presentation suggest that he meets criteria for a Paranoid Personality Disorder. (ECF No. 55-5, Ex. E). Dr. Dreyer also determined that Mr. Brocoli "would benefit from a psychiatric assessment in prison, with consideration for treatment of his mental health symptoms." (*Id.*).

The Government contends that Mr. Broccoli has not demonstrated extraordinary and compelling reasons. The Government submits that Mr. Brocoli's lack of criminal history and his past sexual victimization do not justify his release because the Court was aware of these facts when it sentenced him and because they do "not render the harms presented by predation extraordinary to him." (ECF No. 60 at 8). Additionally, the Government contends this Court should not give weight to Mr. Brocoli's incarceration in a high security prison because the BOP "is in the best position to determine where to house federal inmates." (*Id.* at 6–7).

With respect to Mr. Brocoli's attempted rape in January 2021, the Government argues that it "did not occur in a BOP facility" and therefore "should not weigh in favor of [Mr. Brocoli's] early release." (*Id.* at 8). Moreover, the Government submits that "early release is not the appropriate remedy for improper conduct of other inmates," and suggests that Mr. Brocoli's "anxieties over a potential altercation" can be addressed through a counseling plan. (*Id.*).

Contrary to the Government's position, this Court finds that the circumstances surrounding Mr. Brocoli's incarceration are indeed extraordinary and compelling. Here, the BOP has transferred Mr. Brocoli five times since September 2019, and he will be transferred at least one more time before he reaches his permanent place of incarceration. Two the facilities to which he has been transferred are state institutions that the BOP uses as holding facilities, and he remained at each for six weeks or less. At one of these state institutions, Mr. Brocoli was subjected to an attempted rape. Afterward, he received an evaluation by a psychiatrist who described the importance of his receiving mental health services. Despite this report, Mr. Brocoli appears to have received only two counseling sessions while at Cimarron, on December 3 and December 30, 2020; his prison medical records indicate that he has not received any further counseling services at the two institutions to which he has been transferred since he left Cimarron in January 2021.

Put differently, although Mr. Brocoli was investigated, charged, and sentenced in the federal system, he has nevertheless been detained in state-level institutions for a significant portion of his incarceration. During his incarceration in these state institutions, he reports having been severely abused and victimized. The trauma of these experiences is intensified by the sexual abuse he suffered as a child. Mr. Brocoli explained that his "mind cannot tolerate being touched," that he has been repeatedly "grabbed" and assaulted while incarcerated, and that he "cannot endure any further." (ECF No. 51). Despite this unfortunate set of circumstances, the BOP has not offered Mr.

7

Brocoli a consistent environment nor the mental health services he needs. For these reasons, the Court finds that Mr. Brocoli has demonstrated extraordinary and compelling reasons that could justify his release.

### C. Section 3553 Sentencing Factors

When an incarcerated person demonstrates "extraordinary and compelling reasons" which could justify a reduction in sentence, this Court must also consider "all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 2020 WL 6817488, at *11. A court does not need to "specifically articulat[e]" every single Section 3553(a) factor in its analysis; rather, the record "as a whole" must indicate that the pertinent factors were considered. *Id.* For a reviewing court, the record as a whole constitutes both the original sentencing proceeding and the compassionate release decision. *Id.* at *11–12. Section 3553(a) instructs the Court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement ... issued by the Sentencing Commission . . . ;

> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The conduct that resulted in Mr. Brocoli's incarceration was serious and disrupted the lives of the victims. The Government cites only these facts in its assertion that the 3553(a) factors counsel against Mr. Brocoli's release.

While this Court does not make light of the negative effects of Mr. Brocoli's previous conduct, it also recognizes that the purpose of Mr. Brocoli's sentence may very well be better served through a different kind of sentence going forward. The 30-month sentence Mr. Brocoli received was intended to incapacitate Mr. Brocoli to protect the public, to deter him and others from similar conduct in the future, to rehabilitate Mr. Brocoli so that he may return to his otherwise law-abiding life following his period of incarceration, and to provide him with effective correctional treatment. This Court finds that Mr. Broccoli has not benefitted from these former two goals during his incarceration: rather than rehabilitate and correct, the circumstances of his incarceration appear to have exacerbated his underlying mental health conditions. Mr. Brocoli has not received the mental health counseling he needs, due in part to the transitory nature of his confinement, and there is no guaranteed date for his permanent BOP placement or the resumption of counseling services.

Because Mr. Brocoli's current sentence does not provide just punishment for his offense, and because alternative measures can better effect the goals of incarceration, the Court finds that the § 3553(a) factors weigh in favor of Mr. Brocoli's compassionate release, subject to the additional conditions set forth below. Under the supervision of a halfway house with guaranteed

9

mental health services, Mr. Brocoli will complete his sentence in a manner that better comports with his needs without creating significant sentencing disparities.

## IV. CONCLUSION

For the above reasons, the Court **GRANTS IN PART** Mr. Brocoli's motion for compassionate release; the Court grants Mr. Brocoli's compassionate release but declines to place him on home confinement at this time. Instead, as part of the conditions of Mr. Brocoli's release, he shall serve a term of up to 6 months at the Alvis House, as directed by the United States Probation Office ("USPO"). Additionally, Mr. Brocoli shall participate in a program of mental health assessment and/or counseling, as directed by the USPO, until USPO releases Mr. Brocoli from the program. Mr. Brocoli will make a co-payment for treatment services, not to exceed $25 per month, which will be determined by his ability to pay.

**IT IS SO ORDERED.**

                                              **ALGENON L. MARBLEY**
                                              **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: June 14, 2021**